PLAN CREDIT CORPORATION, Respondent, v. SWINGING SINGLES, INC., Defendant: CROSSEN, Appellant.

*No. 211.   Argued January 31, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 822.)

148

For the appellant there was a brief by *Weber, Gerard & Bonk* of Racine, and oral argument by *Walter D. Thurow* of Madison.

For the respondent there was a brief by *Heft, Coates, Heft, Henzl & Bichler* and *Robert R. Henzl* and *Robert H. Bichler,* all of Racine, and oral argument by *Robert H. Bichler.*

HANLEY, J. The following issues are presented upon this appeal:

(1) Does the doctrine of res judicata apply to make the order vacating the first writ conclusive in determining the validity of the second writ;

(2) Is a Michigan resident entitled to a homestead exemption for a house which he formerly occupied as his Wisconsin homestead;

(3) Was the property *in custodia legis* by virtue of the first writ of attachment and, therefore, not subject to attachment by a subsequent writ;

(4) Was the writ of attachment properly served; and

(5) Was the bond supporting the writ properly executed?

### *Res judicata.*

Appellant contends that the trial court, after hearing the motion to dismiss the first writ of attachment, determined that the homestead exemption was available to appellant, and that this determination should be conclusive over the issues raised by the second writ, under the doctrine of res judicata. However, since the propriety of an attachment must be determined by the condition of things at the time the writ was issued—*Maguire v. Bolen* (1896), 94 Wis. 48, 53, 68 N. W. 408—the trial court's finding that appellant was entitled to the benefit of the homestead exemption related only to November

14, 1969, and not to July 25, 1970. The fact that appellant changed his residence after the first writ was issued altered the legal situation and, therefore, precluded the order from being res judicata over the new situation. *Estate of Evans* (1957), 274 Wis. 459, 470, 80 N. W. 2d 408, 81 N. W. 2d 489.

Moreover, it is clear that the rationale behind the trial court's July 24th decision was not that respondent had attempted to attach exempt property, but rather that respondent had failed to prove appellant was concealing or disposing of assets with the intent to defraud creditors. The second writ was based on a completely different issue—that appellant was not a resident of this state. Since the evidence needed to prove nonresidence was not the same as that required to show an intent to defraud creditors, res judicata would not apply. *Stafford v. General Supply Co.* (1958), 5 Wis. 2d 137, 145, 92 N. W. 2d 267. The issuance of the second writ, since it was based on new and different grounds than was the first writ, was certainly proper. 7 C. J. S., *Attachment,* pp. 387, 388, sec. 200.

### *Homestead exemption.*

Appellant contends that his real estate should be exempt from attachment under sec. 272.20 (1), Stats., which reads as follows:

"(1) An exempt homestead as defined in s. 990.01 (14) selected by a resident owner and occupied by him shall be exempt from execution, from the lien of every judgment and from liability for the debts of such owner to the amount of $10,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. Such exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $10,000, while

held, with the intention to procure another homestead therewith, for 2 years. . . ."

Homestead rights are purely statutory; the owner has no greater right than the statute itself allows. As stated in 40 Am. Jur. 2d, *Homestead,* pp. 123, 124, sec. 12:

"Although the law creating the homestead right is to be construed liberally in the debtor's favor, it should not be so applied as to make it an instrument for the accomplishment of fraud or imposition. Construction should not be so liberal as to depart from the plain and obvious meaning of the words used or to confer rights upon persons who have not brought themselves at least within the spirit of the constitutional or statutory provisions, without being supplemented or extended by judicial construction. The homestead claimant is entitled only to that which the statute has conferred upon him; the courts cannot protect what is not homestead. Homestead exemption laws ought not to be so construed as to give the debtor the power by his own acts to deprive others of rights previously obtained in his property."

In the instant case, appellant is not a "resident owner;" the house is not "occupied by him," as required by sec. 272.20 (1), Stats. His reason for moving to Michigan was to take a position with a Michigan corporation, at a salary of $3,300 per month. He obviously does not intend to return to Wisconsin. Therefore, his is not a "temporary removal with the intention to reoccupy the premises as a homestead." Clearly, the appellant has abandoned his Wisconsin homestead and is therefore not entitled to the exemption.

In *Moore v. Smead* (1895), 89 Wis. 558, 568, 62 N. W. 426, this court stated:

". . . Where a person removes from his homestead without any temporary reason or temporary purpose, and goes to another state with his family, and there takes up his abode, with no certain and abiding intention of returning and reoccupying the same premises, a court or jury may be justified in holding that he thereby aban-

doned such homestead, even though he vaguely contemplated the possibility of returning. . . ."

Appellant has suggested that the section of the statute exempting the proceeds derived from a sale of a homestead should be construed to exempt for two years a house which was formerly the homestead of a debtor, but which has been abandoned by him. In the instant case, appellant has not yet sold his home, but apparently intends to do so, using the proceeds to repay a loan which enabled him to purchase a home in Michigan. Such construction urged by appellant would be contrary to the rule that a person can have but one homestead at a time. *Jarvais v. Moe* (1875), 38 Wis. 440. Here appellant has acquired a homestead in Michigan; he should not be permitted to have the benefit of another homestead exemption in this state.

### *Custodia legis.*

Appellant's next contention is that, since the first writ of attachment had not been dissolved by a formal order of the court at the time the second writ was issued, the real estate was *in custodia legis* and, therefore, not subject to attachment. The legal effect of an attachment was described in *Woods v. Winter* (1948), 252 Wis. 240, 247, 31 N. W. 2d 504, as follows:

"An attachment is the taking into the custody of the law the person or property of one already before the court or of one whom it is sought to bring before it. . . ."

There is no question that the property herein was *in custodia legis,* so that no one could deprive the court or sheriff of either title to or the right to possess the property or could otherwise gain rights superior to that of the court. The concept of property being in the custody of the law does not, however, mean that a second attachment is void. Rather, if several attachments are issued

on the same property, their priorities are determined by the order in which they were issued. *Halpin v. Hall* (1877), 42 Wis. 176, 181. As stated in 7 C. J. S., *Attachment*, p. 463, sec. 277:

> "*Dissolution of senior attachment.* In the case of several successive attachments of the same property, if the first attachment is set aside or dissolved, the second attachment will then be the first in the order of priority."

We conclude that the second writ of attachment was not invalid, but was merely inferior to the first writ, and that when the first writ was dissolved by the order of the court, the second writ advanced in priority.

### *Service of writ.*

The second writ of attachment was served on appellant's attorney. It is asserted that since the attorney was not authorized to accept service of an attachment, the attachment is void.

The statute regulating the service of an attachment is sec. 266.10 (1), Stats., which states:

> "The sheriff shall . . . serve copies of the writ, affidavit and bond, and inventory, upon the defendant in the same manner as a summons. In case of a nonresident . . . the sheriff shall serve such copies on any agent of such defendant in the county, if any be known to him."

Unlike sec. 262.06 (1) (d), which permits the service of a summons "upon an agent authorized by appointment or by law to accept service of the summons for the defendant," sec. 266.10 (1), does not require the agent to be authorized to accept service of an attachment for a nonresident defendant; service upon any agent is sufficient. We think the appellant's attorney was clearly an agent of appellant and, therefore, an appropriate person upon whom to serve the attachment.

*Execution of bond.*

Appellant contends that the bond supporting the writ of attachment is defective in that it fails to show that respondent's attorney was authorized to execute it. The bond is signed: "Plan Credit Corporation By: /s/ Robert R. Henzl, duly authorized attorney."

Although a bond is required to accompany a writ of attachment under sec. 266.06, Stats., it has been held that the bond does not have to be executed by the plaintiff himself; it may be executed by someone on his behalf. *L. A. Shakman & Co. v. Koch* (1896), 93 Wis. 595, 602, 67 N. W. 925. No specific writing need be given to authorize one to act as an agent for most transactions. Restatement, 1 *Agency* 2d, p. 100, sec. 26. The attorney-client relationship itself is sufficient to impliedly authorize an attorney to execute a bond for his client. 2 C. J. S., *Agency,* pp. 1338, 1339, sec. 116. An affidavit of respondent's vice-president was filed with the trial court wherein the authority of the attorney to sign the bond is expressly stated and the obligation of the respondent on the bond is expressly affirmed.

No claim is made that the execution of the bond by counsel violated sec. 256.34, Stats., which prohibits practicing attorneys from being taken as bail or security on any undertaking or bond. Clearly, none could be made since counsel was not a surety on the bond.

Although the better practice would be to show counsel's authorization to execute the bond, the execution of the bond herein is not so defective as to invalidate the writ of attachment.

*By the Court.*—Order affirmed.